Case 1:24-cr-20374-JEM   Document 1   Entered on FLSD Docket   FILED BY___mdc___D.C.

Jun 5, 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami, FL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. __1:23-mj-03087-Reid__

UNITED STATES OF AMERICA

v.

GAL HAIMOVICH,
    Defendant.
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek M. Maynard)?   No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? No

3. Did this matter involve the participation of or consultation with now Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023?   No

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By:  *Maria K. Medetis*
MARIA K. MEDETIS
Assistant United States Attorney
Florida Bar No. 1012329
99 NE 4th Street
Miami, Florida 33132
Tel.:   (305) 961-9020
Email:   maria.medetis@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Gal Haimovich, | ) | Case No. 1:23-mj-03087-Reid |
| | ) | |
| _____ | ) | |
| Defendant(s) | ) | |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __July 2022 through November 2022__ in the county of __Miami-Dade__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 13 U.S.C. § 305 & 15 C.F.R. § 30.71 | Submitting false or misleading export information. |
| 18 U.S.C. §§ 371 & 554 | Conspiracy to smuggle goods from the United States. |

This criminal complaint is based on these facts:

Please see attached affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

Brendan Quinlan, Special Agent, BIS-OEE
Printed name and title

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by __Face Time__

Date: __June 3, 2023__

_____
Judge's signature

City and state: __Miami, Florida__    Honorable Lisette M. Reid, United States Magistrate Judge
Printed name and title

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Brendan Quinlan, being duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.  I make this affidavit in support of a criminal complaint charging Gal Haimovich ("HAIMOVICH") with two counts of submitting false or misleading export information, in violation of 13 U.S.C. § 305, 15 C.F.R. § 30.71, and 18 U.S.C. § 2, and one count of conspiracy to smuggle goods from the United States, in violation of 18 U.S.C. §§ 371 & 554 (together with the aforementioned statutes and regulations, the "Subject Offenses").

2.  As described below, HAIMOVICH is the owner and/or operator of logistics or "freight forwarding" companies that operate in Israel and in the State of Florida. A federal investigation into the unlawful export of U.S.-origin goods to Russia revealed that HAIMOVICH and his companies were a freight forwarder of choice for individuals and entities seeking to unlawfully send goods, including aircraft parts, to Russia in violation of U.S. export laws and regulations. As specifically described herein, HAIMOVICH conspired with others, including a Russian affiliate of S7 Airlines,[1] to unlawfully smuggle out of the United States aircraft parts for the benefit of Russian customers and to conceal the scheme by providing false information in required export filings with U.S. authorities.

---

[1] On or about June 24, 2022, the Bureau of Industry and Security ("BIS") issued an "Order Temporarily Denying [the] Export Privileges"—known as a temporary denial order, or "TDO"—directed at Siberian Airlines d/b/a S7 Airlines. Among other things, that order provided that "no person may, directly or indirectly, . . . [e]xport, reexport, or transfer (in-country) to or on behalf of Siberian [Airlines] any item subject to the EAR except directly related to safety of flight and authorized by BIS pursuant to Section 764.3(a)(2) of the Regulations." The original TDO was for a period of six months, but it was renewed by a new order on or about December 23, 2022 for another six-month period, and remains in effect as of the date of this criminal complaint.

1

3. I am a Special Agent employed by the Office of Export Enforcement, Bureau of Industry and Security, United States Department of Commerce. I have been employed as a Special Agent with the Department of Commerce since November 2016, and before that was a Special Agent with the Department of State, Diplomatic Security Service, beginning in March 2010. Prior to that, I was an Immigration Enforcement Agent with the United States Department of Homeland Security for approximately three years. I am authorized to make arrests for violations of federal law, and I am familiar with the means by which individuals use computers and information networks to commit various crimes.

4. This information in this affidavit comes from my training and experience, my personal observations, my review of documents and records, and information provided to me by other agents, officers, investigators, or witnesses. I submit this affidavit for the limited purpose of establishing probable cause for the requested complaint; as such, I have not included each and every fact known to me concerning this investigation.

5. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that HAIMOVICH has committed violations of the Subject Offenses.

## APPLICABLE LAWS AND REGULATIONS

### Submitting False or Misleading Export Information

6. Section 305, Title 13, provides that "[a]ny person who knowingly fails to file or knowingly submits false or misleading export information through the Shippers Export Declaration (SED) (or any successor document) or the Automated Export System (AES) shall be subject to a fine not to exceed $10,000 per violation or imprisonment for not more than 5 years, or both."

7. Similarly, 15 C.F.R. § 30.71 provides that "[a]ny person, including USPPIs,[2] authorized agents or carriers, who knowingly fails to file or knowingly submits, directly or indirectly, to the U.S. Government, false or misleading export information through the AES, shall be subject to a fine not to exceed $10,000 or imprisonment for not more than five years, or both, for each violation."

8. Pursuant to U.S. law and regulations, exporters or their authorized agents, such as shippers or freight forwarders, are required to file certain forms and declarations concerning the export of goods and technology from the United States. Typically, those documents are filed electronically through AES, which is administered by the U.S. Department of Homeland Security, Customs and Border Protection.

9. The Electronic Export Information ("EEI") (formerly known as the SED) is the required documentation submitted to the U.S. Government through the AES in connection with an export shipment from the United States. Exporters or their authorized agents are required to file accurate and truthful EEI for every export of goods from the United States with a value of $2,500 or more. An EEI also is required regardless of the value of the goods if the goods require an export license. 15 C.F.R. §§ 758.1, 30.2.

10. A material part of the EEI and AES, as well as other export filings, is information concerning the end user and ultimate destination of the export. The identity of the end user may determine whether the goods: (a) may be exported without any specific authorization or license from the U.S. Government; (b) may be exported with the specific authorization or license from the U.S. Government; or (c) may not be exported from the United States.

---

[2] The "USPPI" is the U.S. Principal Party in Interest, which is the person or legal entity in the United States that receives the primary benefit, monetary or otherwise, from an export transaction.

3

**Conspiracy and Smuggling**

11. The smuggling statute, 18 U.S.C. § 554, provides:

Whoever fraudulently or knowingly exports or sends from the United States, or attempts to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise, article or object, prior to exportation, knowing the same to be intended for exportation contrary to any law or regulation of the United States, shall be fined under this title, imprisoned not more than 10 years, or both.

12. Because 13 U.S.C. § 305 and 15 C.F.R. § 30.71 are "law[s] or regulation[s] of the United States," violations of those provisions in connection with the fraudulent or knowing export, or receipt or facilitation of transportation prior to exportation, can serve as the basis for a violation of the smuggling statute, 18 U.S.C. § 554.

13. The general conspiracy statute, 18 U.S.C. § 371, provides, "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both."

**PROBABLE CAUSE**

**Background on HAIMOVICH and His Companies**

14. According to immigration records filed with the U.S. government and HAIMOVICH's LinkedIn profile, HAIMOVICH is an executive of a business entity or entities that are known in varying forms as "Control Towers International" or "CTI." According to HAIMOVICH's U.S. immigration filings, he is an Israeli citizen.

15. According to a 2012 visa application in HAIMOVICH's name, HAIMOVICH was employed by "Control Towers Israel," and he described his occupation as, "Owner / Operation

4

Manager of Logistics / Shipments." According to immigration paperwork filed by HAIMOVICH in April, 2023, HAIMOVICH is "self employed" as the "owner and manager of [a] logistics and international shipping company."[3] HAIMOVICH listed "CTI – Control Towers USA," located at 3331 NW 82nd Avenue, Doral, Florida 33122 (hereinafter, the "CTI Florida Address") as an organizational point of contact for his recent entry into the United States.[4]

16. I have found and observed a LinkedIn profile in the name of HAIMOVICH. The profile indicates that HAIMOVICH may reside in the Netherlands. In the "experience" section of the profile, it states that HAIMOVICH is the "owner" of "CTI – CONTROL TOWERS INTERNATIONAL," where he has worked from January, 2007 to present.

17. As indicated in the introduction to this affidavit, this investigation has revealed that CTI is a freight forwarding company that is deeply involved in exporting goods to Russia in violation of U.S. export laws and regulations.

(a) For instance, numerous federal export-control investigations indicated that a company in the Maldives, referred to here as "Maldivian Company-1," was being used to illicitly transship U.S.-origin goods to Russia. Maldivian Company-1 was frequently listed as the "ultimate consignee"[5] on shipping and export documents in

---

[3] HAIMOVICH most recently entered the United States on March 31, 2023. Prior to this recent trip, it appears HAIMOVICH's last entry into the United States was on or about November 13, 2021.

[4] According to Florida's Division of Corporations website, Control Towers International Inc. is a Washington business entity registered to do business in the State of Florida; its principal address is listed as the CTI Florida Address. An individual named Tal Haimovich, who investigators believe is a relative of Gal HAIMOVICH, is listed as the Vice President of Control Towers Internationals, Inc.

[5] The "ultimate consignee" is the "principal party in interest located abroad who receives the exported or reexported items. The ultimate consignee *is not a forwarding agent* or other intermediary, but may be the end-user." 15 C.F.R. § 748.5(e) (emphasis added).

5

connection with unlawful exports. Between July and November, 2022, CTI arranged for 66 shipments to Maldivian Company-1. During a February, 2023 post-shipment verification conducted by a BIS agent, an individual involved with Maldivian Company-1 admitted that Maldivian Company-1 is effectively a shipping/logistics company and is never the end user of products it handles. This individual further admitted that Maldivian Company-1 does in fact ship to Russia, adding that shipments to Russia are a small portion of the company's business (but have increased since Russian's further invasion of Ukraine). In connection with the post-shipment verification process, the employee provided documentation in connection with certain shipments which originated in the United States; according to the documents provided, several of these shipments were transshipped to Russia through Maldivian Company-1. On or about May 16, 2023, Maldivian Company-1 became the subject of a BIS TDO.

(b) Between April of 2022 and January of 2023, CTI arranged 106 shipments to a particular company in the UAE ("UAE Company-1"). UAE Company-1 is a freight forwarder, and its website displays a Russian flag on its homepage. Open-source research indicates that the company's Internet domain was registered by a "private person" in Moscow, Russia. U.S. Department of Commerce employees in the UAE contacted representatives of UAE Company-1 about exports

                              from the United States, but UAE Company-1 did not cooperate with the attempted "end use check."

(c)      Between May of 2022 and April of 2023, CTI arranged five shipments to another company in the UAE ("UAE Company-2"). U.S. Department of Commerce employees contacted UAE Company-2 and were informed that two of the specific shipments they were inquiring about were in fact shipped to Russia.

(d)      Between March and November of 2022, shipments, both domestic and international, which were arranged using CTI's FedEx account, were tracked over 200 times from IP addresses that resolve to Russia or Belarus. Twenty-two of these IP logins are associated with addresses registered to S7 (according to open-source databases).

18.      Based on a review of lawfully obtained email communications, I have learned the information stated below.

**HAIMOVICH and CTI Export an Air Data Module to S7 Engineering / S7 Technics in Russia**

19.      Beginning no later than July, 2022, S7[6] sought to acquire an aircraft part known as an "air data module."[7] An individual acting on S7's behalf (the "Individual-1") ultimately agreed

---

[6] As depicted in the following paragraph, HAIMOVICH and Company-1 exchanged communications with employees of S7 Engineering LLC or S7 Technics. I recently visited the public website for Siberian Airlines ("S7"), including the "About the Company" page. On that page, there is a section titled, "Group of Companies," and S7 Technics, with the logo depicted in the following paragraph, is named as part of the S7 "Group of Companies." As such, I believe that S7 Technic and S7 Engineering LLC are affiliates or subsidiaries of S7 Airlines. For ease of reference, all S7 entities are referred to herein simply as "S7."

[7] In the paragraphs that follow, I quote from numerous of the above-referenced email communications. For the vast majority of these email communications, I am not quoting or providing the full text or content of the communication, only the most relevant parts. Many of the

to buy the unit from Company-1, a foreign business entity, for several thousand dollars. Company-1, in turn, purchased the unit from a company located in the United States for $3,800.

20. Once the deal was confirmed, Company-1 provided a "pickup address" and asked S7 to name their freight forwarder. On July 28, 2022, an S7 employee sent an email (to several people, including HAIMOVICH (**ops@ctigroup.net**)) stating, "Dear team, our freight forwarder for this shipment will be CTI team. Please provide the invoice ASAP." The email continued, "Dear CTI team, please arrange transportation to Moscow via your agent in SHJ by AOG [aircraft on ground]."[8] The S7 representative then provided the weight, dimensions, and pickup address for the shipment. The S7 representative concluded her email with the following (with bolded red font and highlighting in original):

> Dear all, the actual shipper should not know that the cargo is following to Russia!
>
> ███████████
> Specialist of Transportation Logistics Department
> «S7 ENGINEERING» LLC.
>
>  Technics
>
> Domodedovo Airport, build 9, 142015
>
> Moscow Region, Russia

---

quotations are not grammatically proper and/or contain typographical errors, and I have occasionally used "[sic]" to indicate such errors; most such quotes have not been corrected, however, and appear in original form.

[8] Based on my training, experience, and research, I know that "SHJ" is a reference to Sharjah International Airport, an international airport near Sharjah, United Arab Emirates.

21. On July 29, 2022, an S7 representative emailed, "Dear CTI, Did you pick up the cargo?" In response to this email, HAIMOVICH asked a Company-1 representative for a FedEx tracking number. The email was signed "Gal Haimovich, CTI Israel Ltd, Beit Hillel 7, Tel Aviv, Israel, 6701707." The email was sent from **ops@ctigroup.net**.[9]

22. Subsequently, Company-1 indicated that the unit was being shipped to HAIMOVICH/CTI.

23. On August 1, 2022, HAIMOVICH emailed Company-1, writing, "Please send the US Vendor invoice + ask them to fill the attached SLI [shipper's letter of instruction]." HAIMOVICH then indicated that "tab12" of the SLI—the "Intermediate Consignee"—should list Maldivian Company-1.

24. On August 3, 2022, Company-1 sent an email confirming that the unit was delivered to CTI in Doral, Florida. That same day, HAIMOVICH emailed S7 and Company-1, stating, "This will ship out today ex MIA."

25. Later that day, a representative from S7 wrote, "Dear CTI, please ship it on the closest possible flight via SHJ. I mean we need this to be shipped not via MLE, but on a direct SHJ – DME . . . flight."[10]

26. Also, that day, HAIMOVICH wrote that the "shipment just arrived our MIAMI Hub. We will have it on the first flight out to SHJ." Later that day, HAIMOVICH wrote to S7, "Hello [S7 representative], See attached copy of the AWB [air waybill]: 157-73821171. ETA

---

[9] Unless otherwise indicated, all emails from HAIMOVICH came from this email account.

[10] Based on my training, experience, and research, I know that MLE is the airport code for Velana International Airport, the main international airport in the Maldives. I also know that DME is the airport code for Domodedovo Mikhail Lomonosov International Airport in Moscow, Russia.

SHJ 6.8.[11] Can you please send me copy of the forward invoice to MOW?"[12] The S7 employee responded the same day, attaching a commercial invoice for a freight forwarding company, which showed that the unit was "sold to" S7 Engineering LLC in Moscow and was being "ship[ped] to" S7 Engineering LLC in Moscow, Russia.

27. On August 5, 2022, an S7 representative wrote, "Dear team, please advise the booking to Moscow." HAIMOVICH responded, writing: "Hello Team, Shipment in transit to SHJ with ETA 7.8[.] I will have to AWB to MOW by Sunday/Monday on arrival[.]"

28. On August 7, 2022, an S7 employee asked if the air waybill was available. HAIMOVICH responded, "Hello Team, Please fin [sic] attached copy of the pre alert: 514-05901070[.] ETA DME: 7.8. Freight invoice to follow."

29. Attached to the email chain is an air waybill, number 514-05901070, reflecting a shipment of "civil aircraft spare parts" to S7 Engineering LLC at Domodedovo International Airport in Moscow.

### **HAIMOVICH and CTI Agree to Ship an ADIRU to S7 in Russia**

30. No later than August 24, 2022, S7 was seeking to acquire an air data and inertial reference unit (also known as an "ADIRU"). In an email with the subject line "Re: quote for Siberia JSC: AIR DATA AND INERTIAL REFERENCE UNIT 465020-0303-03161," Company-1 quoted a price, with shipment to the UAE, of $29,500. Ultimately, it appears that S7 again used Individual-1 to purchase the part from Company-1.

---

[11] Based on context, I believe "6.8" means August 6. Further communications also reference dates in this format [day/month].

[12] Based on my training, experience, and research, I know that MOW is the airport code for Moscow Metropolitan Area Airport in Moscow, Russia.

31.     On September 11, 2022, Company-1 confirmed its receipt of payment for the part. A Company-1 representative then asked for the name of S7's "forwarder."

32.     An S7 representative responded, "Dear [Company-1] Team, please release this shipment to CTI team.  Dear CTI team, please arrange transportation to Moscow orders. . . . ***The main point is that S7 should not be involved in this deal, until the goods reach the transit point. Moreover, the vendor must not understand that the goods are going to Russia.***" (emphasis added).

33.     That same day, HAIMOVICH wrote to Company-1, asking Company-1 to: (a) provide the U.S. supplier's invoice; (b) have the U.S. supplier fill out the attached SLI form; and (c) have the U.S. supplier ship the part to CTI using CTI's FedEx account.  HAIMOVICH advised that the part should be shipped to "CTi USA" at the CTI Florida Address.

34.     Ultimately, the part was shipped to CTI in Florida.  On September 19, 2022, HAIMOVICH wrote:

"Hello All,

Orderb [sic] is on hand in our Miami facility.
My concern – ADRIU [sic] is a very sensetive [sic] components and can raise lots of red flags once we book it to MLE with the given PPW

[Company-1 rep],
The SLI was not filled correctly and can cause huge problems.  Did you signed any end user certificate with [the U.S. supplier]?  Can you share with us?

2 options:
1. We can ship this to Jordan and from there tranship to MOW
2. We can ship it to UAE and then tranship to MOW

In both cases we will need a proper filled SLI by [the U.S. supplier]."

35.     In a subsequent communication on the same topic, HAIMOVICH again asked Company-1 to have their U.S. supplier fill out "correctly" the SLI document.  HAIMOVICH

11

stated that field 10—where the "Ultimate Consignee" is named—should state Company-1's name and business address, even though HAIMOVICH knew that the part was actually destined for S7 in Russia. HAIMOVICH further indicated that the intermediate consignee should reflect a particular company in the UAE.

36. Company-1 thereafter stated that they could not have their U.S. supplier fill out an SLI "for this sensitive item." Company-1 and HAIMOVICH exchanged several emails about how to resolve this problem, with HAIMOVICH at one point saying, "Please approach [the U.S. supplier] and tell them you are shipping it to your warehouse in [a third-party country that is not Russia] till you will have a buyer and ask them to fill the SLI." Company-1 responded: "No they will not accept that as this item too Hard and very sensitive to ship out of USA…Best option then to return to us then will ship to UAE Address." HAIMOVICH then agreed to send the part back to Company-1 or its agent in the United States. HAIMOVICH later provided a FedEx tracking number for this return shipment.

**HAIMOVICH and CTI Export a Fuel Pump to S7 and Filed, or Cause to be Filed, False Information in AES**

37. On or about September 17, 2022, Individual-1, acting on behalf of S7, sent a purchase order for a fuel pump to Company-1. Company-1 accepted the offer, at $25,000, and told Individual-1 to wire payment for the part. Company-1 then asked Individual-1 to "advise ship address and method ..Note if your shipper will have problem lets know then can check to move unit to your address in UAE and add the ship cost.." Individual-1 then turned around and emailed the "Shipping Team" at S7, stating, "Please see pick-up details below and advise an FF [freight forwarder] and ship-to address" for this purchase order.

38. On September 27, 2022, an S7 representative responded: "Dear team, our FF will be CTI[.] Dear CTI, Please advise ship to address. Once order will be ready for pick up, please

12

send by AOG to Moscow." The S7 representative then provided a weight, dimensions, and pickup address for the shipment. The S7 representative concluded her email with the following (with bolded red font and highlighting in original):

**Dear all,**

**The actual shipper should not know that cargo is following to Russia!**



Transportation logistics specialist
«S7 ENGINEERING» LLC

S7 Technics

Domodedovo Airport, build 9, 142015

Moscow Region, Russia

39. On September 27, 2022, HAIMOVICH responded, asking Company-1 to: (a) "share with us your US supplier invoice"; (b) "[a]sk your US supplier to fill the attached SLI and send us a copy"; and (c) "[a]sk your supplier ship this order using our FedEx account . . . ." HAIMOVICH advised that the part should be shipped to the CTI Florida Address.

40. Later that same day, Company-1 responded, "Hey Gal, Please see below awbn [air waybill number] and will send original invoice at next email . . for SLI will be wait from vendor to fill it out . . ."

41. Subsequently, on October 5, 2022, HAIMOVICH confirmed that the part had "arrived to CTi MIA Warehouse."

42. On October 12, 2022, HAIMOVICH emailed Company-1, asking Company-1 to have their U.S. supplier "fill in fully the attached SLI including signature showing [Company-1 and its foreign (non-Russia) address] as the ultimate consignee." HAIMOVICH, as S7's hired

13

freight forwarder, made this request knowing that Company-1 was *not* in fact the ultimate consignee, but that S7 was.

43. On October 19, 2022, HAIMOVICH followed up with Company-1, writing, "Any luck here?"

44. An EEI was subsequently filed, on October 21, 2022, in connection with this export. The filer ID associated with this EEI is the filer ID for Control Towers International. The filed EEI identifies the fuel pump as "civil aircraft parts" valued at $18,000, which is how much Company-1 paid for the part. The EEI reflects that the pump is classified as ECCN 9A991 and that no license is required for export. Just as HAIMOVICH had requested, Company-1 is listed in the "Ultimate Consignee" field. Control Towers International at the CTI Florida Address is listed as the forwarding agent. The port of export is listed as Miami International Airport.

45. Based on the facts stated above, I believe that HAIMOVICH filed, or caused to be filed, the above-referenced EEI, which falsely states that Company-1 is the "ultimate consignee" for the export. At the time the EEI was filed, HAIMOVICH knew that S7 was in fact the ultimate consignee for the fuel pump at issue. As such, there is probable cause to believe that HAIMOVICH violated 13 U.S.C. § 305, 15 C.F.R. § 30.71, and 18 U.S.C. § 2.

### HAIMOVICH and CTI Export Another Fuel Pump to S7 and Filed, or Cause to be Filed, False Information in AES

46. On or about September 13, 2022, Individual-1, acting on behalf of S7, sent a purchase order for a fuel pump to Company-1. Company-1 accepted the offer, at $20,500. Company-1 then asked Individual-1 to "advise ship address and method." Individual-1 then turned around and emailed the "Shipping Team" at S7, stating, "FYA please see below pick-up details for" this purchase order.

47.     On September 22, 2022, an S7 representative responded, stating: "Dear team, please release the order to CTI and provide invoices[.] Dear CTI[,] Please arrange transportation to DME[.]"

48.     In response to the above, HAIMOVICH sent an email asking Company-1: (a) "share with us your US supplier invoice"; (b) "[a]sk your US supplier to fill the attached SLI and send us a copy"; and (c) "[a]sk your supplier ship this order using our FedEx account . . . ." HAIMOVICH advised that the part should be shipped to the CTI Florida Address.

49.     A representative of Company-1 responded that they "ship daily from USA without SLI even to S7 we ship to UAE without it …. You know once we [go] back to vendor for that they asking ask [sic] for more details like whos [sic] end user and they informed that we buy for stock ..Shipper invoice is possible and [Company-1] docs//invoice ..even we ship to another customers from USA without SLI !" HAIMOVICH responded, "SLI is mandatory if components are above 2000.00 USD [a]nd export declaration must be created." A Company-1 representative then asked, "Great …why dont use [Company-1] invoice under 2000 for shipping ??" HAIMOVICH responded, "Because the export file is for the US entity." Company-1 thereafter provided an SLI; the "Ultimate Consignee" field stated, "WE DON'T HAVE THIS INFORMATION." The form was "signed" by a representative of Company-1'2 U.S. supplier.

50.     On September 26, 2022, an S7 representative sent an email asking for an update. "Dear [Company-1] team, please provide tracking number! This cargo is very urgent, please advise when CTI will they receive the shipment? Dear CTI, could you pick up the cargo from the supplier yourself in this case and send it to us as soon as possible?" Later that day, a Company-1 representative appears to have emailed an air waybill "label" to the group.

15

51. On October 12, 2022, HAIMOVICH wrote: "Hello [Company-1] team, Can you please ask [the U.S. supplier] to update the attached SLI and to show [Company-1] Address in [foreign (non-Russia) address] as the ultimate consignee?" HAIMOVICH attached to his email an SLI, which listed Company-1 and its foreign address in the "Ultimate Consignee" field. HAIMOVICH, as S7's hired freight forwarder, made this request knowing that Company-1 was *not* in fact the ultimate consignee, but that S7 was.

52. Company-1 responded that they would be unable to ask or get their U.S. supplier to provide the SLI as requested. Company-1 also asked, "Where is units located now ?"

53. HAIMOVICH responded: "Orders are in our Miami warehouse. let me know how we should proceed[.]" Company-1 responded, in turn, saying, "Not sure but we sold daily and ship out of US with NO issue ..what is the problem here[?]"

54. In response, HAIMOVICH, on October 12, 2022, wrote: "US Commerce and [sic] getting strict and need to have a proper docs to keep you safe as well[.]"

55. HAIMOVICH and Company-1 exchanged further correspondence about how to address the issue, with HAIMOVICH writing: "Please ask the vendor to change the 'ship to' also to [Company-1] and the SLI as well[.]"

56. An EEI was subsequently filed, on November 14, 2022, in connection with this export. The filer ID associated with this EEI is the filer ID for Control Towers International. The filed EEI identifies the fuel pump as "civil aircraft parts" valued at $14,500. The EEI reflects that the pump is classified as ECCN 9A991 and that no license is required for export. Just as HAIMOVICH had requested, Company-1 is listed in the "Ultimate Consignee" field. Control Towers International at the CTI Florida Address is listed as the forwarding agent. The port of export is listed as Miami International Airport.

57.     Based on the facts stated above, I believe that HAIMOVICH filed, or caused to be filed, the above-referenced EEI, which falsely states that Company-1 is the "ultimate consignee" for the export. At the time the EEI was filed, HAIMOVICH knew that S7 was in fact the ultimate consignee for the fuel pump at issue. As such, there is probable cause to believe that HAIMOVICH violated 13 U.S.C. § 305, 15 C.F.R. § 30.71, and 18 U.S.C. § 2.

## CONCLUSION

58.     Based on the facts stated herein, I submit that there is probable cause to charge HAIMOVICH with two counts of violating 13 U.S.C. § 305, 15 C.F.R. § 30.71, and 18 U.S.C. § 2 based on the false and misleading EEI filed in connection with the October and November, 2022 exports referenced in Paragraphs 37–57, above. I further submit that there is probable cause to believe that HAIMOVICH conspired with others to violate 18 U.S.C. § 554 by, among other things, agreeing to file or causing to be filed false information with the U.S. Government in connection with the fraudulent or knowing export of goods from the United States and the receipt and facilitation of transportation, prior to exportation, of goods or objects to be exported from the United States.

*[This space intentionally left blank.]*

59. I respectfully request that the court therefore issue a criminal complaint charging HAIMOVICH with two counts of violating 13 U.S.C. § 305, 15 C.F.R. § 30.71, and 18 U.S.C. § 2 and one count of violating 18 U.S.C. §§ 371 & 554. I additionally request that an arrest warrant be issued on the criminal complaint.

FURTHER AFFIANT SAYETH NAUGHT.

Brendan Quinlan
Special Agent
Bureau of Industry and Security,
Office of Export Enforcement

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by FaceTime, this 3rd of June 2023.

HONRABLE LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

18